**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 11-259 |
| | : | |
| BLUE MARSH LABORATORIES, INC. | : | |
| & MICHAEL J. McKENNA, | : | |
| Defendants. | : | |

**M E M O R A N D U M**

STENGEL, J.                                                    May 24, 2012

      Blue Marsh Laboratories, Inc. and Michael J. McKenna are charged with one count of criminal conspiracy, fifty-one counts of mail fraud, thirty counts of violating the Clean Water Act, and two counts of making false statements. The defendants filed a motion to suppress evidence due to an unlawful search and seizure of Blue Marsh Laboratories, a motion to suppress the statement of McKenna given at the time a search warrant was executed on Blue Marsh Laboratories, a motion to suppress a recorded phone call between McKenna and a cooperating witness of the government, and a motion to bar the government from use of McKenna's prior criminal record. For the following reasons, I will deny the defendants' motions.

**I.       BACKGROUND**

      McKenna owns all of the stock in Blue Marsh Laboratories, a commercial chemical testing laboratory in Douglassville, Pennsylvania. On January 9, 2008, agents from the Pennsylvania Attorney General's Office searched Blue Marsh Laboratories pursuant to a warrant issued by Judge Patrick J. Toole, Senior Judge of the Pennsylvania

Court of Common Pleas and Supervising Judge of the 27th statewide investigating grand

jury.  During the course of the search and seizure, the agents removed approximately 84

computer hard drives from the laboratory.  Shortly after the search began, McKenna

arrived at Blue Marsh Laboratories and spoke with agents at the scene.  McKenna

terminated the interview after receiving a phone call from his attorney, who advised him

not to answer further questions.

On November 19, 2009, Federal agents tape-recorded a telephone call between

McKenna and a government witness identified as Chad Stover.  Special Agent James

Lorah recorded the phone call.  The government did not obtain a search warrant.  Chad

Stover consented to recording the phone call.  The government produced the recorded

phone call to the defense.

McKenna has a prior criminal conviction for making unsworn falsifications to

authorities.  McKenna pleaded *nolo contendere* on two counts of unsworn falsification to

authorities for submitting false laboratory results and was found guilty on February 6,

1995.  McKenna's certified conviction records show that he was convicted of making

written false statements to the state Department of Environmental Resources (predecessor

to the Department of Environmental Protection) "regarding false test results" relating to

water quality testing.

## II.   DISCUSSION

### A.   The Search Warrant was Not Defective Because the Search Warrant was Not a General Warrant, There was Probable Cause to Issue the Warrant and the Warrant was Properly Executed.

The defendants assert various grounds for suppression of evidence seized pursuant to the search warrant executed on January 9, 2008.  The defendants argue that the warrant was defective because the warrant was not issued by an authority within the judicial district of the place to be searched, there was no probable cause for issuance of the warrant, it is a general warrant, the warrant does not describe the place to be searched with particularity, the warrant was not served upon the defendants at the time of execution, the warrant does not authorize removal of computer hard drives, the affidavits attached to the warrant were not delivered to the defendant, there was no good cause for sealing the warrant, and there was no good cause for authorizing a night-time search.

For purposes of the Fourth Amendment requirement that the issuance of a warrant be based upon probable cause, the term "probable cause" requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.  The United States Supreme Court defines the probable cause necessary to issue a search warrant as "a fair probability that contraband or evidence of a crime will be found in a particular place."  New York v. P.J. Video, Inc., 475 U.S. 868, 876 (1986) (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).  The Supreme Court applies a "totality of the circumstances" test to determine whether probable cause existed for the issuance of a search warrant.  Illinois v. Gates, 462 U.S. 213, 238 (1983).  A reviewing court need not

3

determine whether probable cause actually existed, rather, the court must find that there

was a "substantial basis for finding probable cause."  <u>United States v. Whitner</u>, 219 F.2d

289, 296 (3d Cir. 2000).

     The search warrant application signed by Judge Toole was supported by an

affidavit of Special Agent Hentz, of the Environmental Crimes Section of the

Pennsylvania Attorney General's Office.  In his affidavit, Hentz reviews information

gathered through witness interviews, which shows that Blue Marsh Laboratories is

disregarding legal reporting requirements, falsifying laboratory results and other

documents, and failing to maintain standards and procedures required by the laboratory's

accreditation status.  Hentz sets forth information from interviews with seven different

witnesses.  The identity of the witnesses and the bases for their knowledge are supplied in

the affidavit.  The observations of each witness corroborate the premise that Blue Marsh

Laboratories and McKenna are violating the law in the procedures they follow and the

findings they report.  The affidavit of probable cause provided Judge Toole with enough

information to believe that evidence of a crime would be found at Blue Marsh

Laboratories.  Judge Toole, having been provided with the application, affidavit, and

attachments, made a reasonable determination that probable cause existed to search Blue

Marsh Laboratories' premises.[1]  I find that there was a substantial basis for finding

---

[1] During the preliminary motions hearing, the defendant argued, for the first time, that an investigation by the Attorney General's Office into allegations surrounding Judge Toole's son undermined the independence of Judge Toole.  The defendant offered no testimony to support this argument, and instead, admitted into evidence transcripts of several of Judge Toole's hearings involving the state criminal investigation to support his assertion.  I have reviewed the transcripts of Judge Toole's hearings and I can find nothing that would undermine the probable cause

probable cause and issuing the search warrant.

The warrant was not a general warrant.  The warrant specifically described the place to be searched as "Blue Marsh Laboratories, Inc., 1605 Ben Franklin Highway (also known as "Benjamin Franklin Highway") Douglasville, Berks County, Pennsylvania 19518-1938, including the out buildings and outside chemical storage containers."  The warrant also lists the items to be seized in "Attachment A."  The defendants complain that the warrant did not allow for seizure of computer hard drives.  However, the warrant application does authorize seizing the documents on the computers, and the Agent's affidavit specifically contemplates seizing and removing the hard drives at paragraphs XVII and XVIII.  Specifically, paragraph XVIII of the affidavit explains that:

> Examination and recovery of electronically stored records requires that the computer(s) and storage devices be removed to a laboratory setting for examination and analysis by a qualified computer forensic expert as to this highly technical process which can take many days or weeks to complete. To attempt such examination on-site would be both impractical and invasive.

The warrant also lists the items to be searched for and seized in Attachment A, including "all documents requested in items 1 through 13 inclusive that are maintained in a computer data file, whether connected to a computer or not."  There is no merit to the defendants' argument that the agents acted outside the scope of the warrant by physically seizing the hard drives rather than copying the digital evidence from the 84 computer hard drives while on-site during the execution of the warrant on January 9, 2008.  The

---

determination made in this search warrant application.

warrant specifically contemplates seizure of the hard drives and does not vest the executing agents with unbridled discretion to rummage around in the defendants' possessions in search of undefined evidence of crimes.  The warrant identifies the place to be searched and the things to be seized, including the computer hard drives.  The warrant clearly authorizes the agents to seize the computer data and the manner in which the agents did so was not unreasonable and certainly does not undermine the validity of the warrant itself.

The defendants raise various complaints that the warrant was not authorized or executed correctly.  Some of these complaints are plainly moot.  A night time search was not conducted, so any wrongful authorization of a night time search is irrelevant and caused no prejudice to the defendants.  The claim that there was no good cause to seal portions of the warrant and the affidavits were not initially delivered have been obviated as the documents have been unsealed and provided to the defendants in a timely manner. Judge Toole signed the warrant as part of his authority over a statewide investigating grand jury.  He had statewide jurisdiction pertaining to matters investigated by that grand jury.  His authority permitted him to authorize the search of a location in Berks County although he did not sit in Berks County.

The defendants contend that the warrant was not properly served on the defendants during the search.  Hentz testified that he was present during the search and provided the defendants with the face sheet of the search warrant.  Hentz further testified that an inventory of seized items was given to the Defendant at the conclusion of the search.

McKenna signed the receipt of inventory of seized property.  At the time of the search, the affidavit accompanying the search warrant was sealed pursuant to a court order.  The judge made a reasonable finding that there was good cause to seal the warrant in order to protect the secrecy of the matters occurring before the grand jury and to protect the cooperating witness.  The government had no obligation to provide the affidavit to the defendants at the time of the search of Blue Marsh Laboratories.  The affidavit was eventually unsealed and timely provided to the defendants.  Accordingly, I find the search warrant was properly executed and there are no grounds to suppress evidence obtained pursuant to the search warrant.

### B.   McKenna's Statement to Agents During the Execution of the Search Warrant Was Voluntary.

McKenna claims he was detained at Blue Marsh Laboratories on January 9, 2008, and subjected to a custodial interrogation without *Miranda* warnings.  The Government maintains that McKenna came to the location voluntarily, was not placed under arrest, and therefore his statements were voluntary.  A person is in custody for *Miranda* purposes "when the authorities say or do something objectively indicating 'they would not have heeded a request to depart or to allow the suspect to do so.'"  United States v. King, 604 F.3d 125, 138 (3d Cir. 2010).  The court reviews the following factors to determine a person's custody status:

(1) Whether the officers told the suspect he was under arrest or free to leave,
(2) The location or physical surrounding of the interrogation,
(3) The length of the interrogation,

(4) Whether the officers used coercive tactics such as hostile tones of voice, the
    display of weapons, or physical restraint of the suspect's movement, and

(5) Whether the suspect voluntarily submitted to questioning.

King, 604 F.3d at 138.

McKenna testified that he voluntarily arrived at Blue Marsh Laboratories after he received a phone call from an employee to his home informing him that Agents were searching Blue Marsh Laboratories.  When he arrived at Blue Marsh Laboratories, Hentz was standing in the hallway near the lunchroom.  Hentz identified himself as a special agent of the Environmental Crimes Section of the Pennsylvania Attorney General's Office, shook McKenna's hand, handed McKenna the search warrant, and walked McKenna to the lunchroom with the other employees.  One agent monitored the employees in the lunchroom.  The agent monitoring the employees had a badge and a gun.  The employees were free to leave the premises as they pleased.  Several employees were being interviewed by agents in the lunchroom.  About 15 minutes after McKenna's arrival, Hentz asked McKenna to come with him to McKenna's office.  McKenna agreed and Hentz led the way.

Hentz began to ask McKenna questions in his office.  McKenna did not ask if he could leave and Hentz did not tell McKenna that he could not leave.  Shortly after the questioning began, McKenna stopped to receive a phone call on his cell phone and walked out into the hallway.  The phone call was from his attorney, who advised him to discontinue the interview.  McKenna then informed Hentz he did not want to continue with the interview and Hentz did not ask any further questions.

The testimony presented during the pretrial motions hearing establishes that McKenna came to Blue Marsh Laboratories voluntarily and was never placed under arrest.  McKenna chose to drive to Blue Marsh Laboratories on his own volition after he learned that agents were executing search warrant on the premises. His statement to the investigating agents was voluntary because he was not forced to make a statement and was free to leave at all times.  McKenna decided to terminate the interview after he received a phone call from his attorney.  The agents did not attempt to reinitiate questioning.  McKenna's testimony establishes that he was not subjected to a custodial interrogation and was therefore not entitled to Miranda warnings.  Accordingly, the defendant's motion to suppress his statements is denied.

### C.     The Recorded Phone Call is Not Subject to Suppression.

On November 19, 2009, with the consent of the cooperating witness, Special Agent James Lorah recorded a phone call placed by the witness to McKenna.  McKenna argues that the recording must be suppressed because it was obtained in violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S.A. § 5701 *et seq.*  The defendants contend that the government violated the criminal act, and therefore, the statute "mandates that all charges against the defendants be dismissed." However, Special Agent Lorah was authorized by federal law to record the call with the consent of the witness under 18 U.S.C. § 2511(2)(c).  To the extent that Pennsylvania's wiretap law conflicts with federal law, Pennsylvania's law is pre-empted.  See Banal v. Russ, 513 F. Supp. 2d 264, 283 (E.D. Pa. 2007).  Therefore, the recorded call is not

subject to suppression.[2]

### D.     McKenna's Prior Criminal Convictions are Admissible.

McKenna wants to bar the government from using his prior criminal convictions for making unsworn falsifications to authorities when he submitted false laboratory test results.  The Government argues that the prior convictions are admissible under Fed. R. Evid. 404(b) in its case in chief, and under Fed. R. Evid. 609 should the Defendant choose to testify.  Evidence of a past criminal act may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, intent, absence of mistake, or lack of accident.  FED. R. EVID. 404(b)(2).  The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice.  See FED. R. EVID. 403.  A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for untruthfulness.  FED. R. EVID. 608(a). Crimes of dishonesty that are more than 10 years old are admissible to attack a witness's character for truthfulness  only where the probative value of the conviction substantially outweighs its prejudicial effect, and the defendant has been provided with the opportunity to contest the use of the conviction for impeachment.  FED. R. EVID. 609.

The government intends to introduce McKenna's conviction for lying to the environmental regulator about test results to show absence of mistake, lack of accident, opportunity, plan, knowledge, or intent in the current case, which centers around false and manipulated laboratory results.  The government seeks to introduce the evidence for

---

[2] If the government intends to use the recorded call in evidence, it must file a *Starks* motion so that the admissibility of the recording and transcript can be litigated prior to trial.

a permissible purpose under Fed. R. Evid. 404(b) and I find that the convictions'

prejudicial effect does not substantially outweigh its probative value.  Therefore, the

evidence is admissible under 404(b) to prove absence of mistake, lack of accident,

opportunity, plan, knowledge, or intent.  The government is not permitted, however, to

introduce evidence of the crimes to prove McKenna's character in order to show that

McKenna later acted in accordance with that character.  See FED. R. EVID. 404(b)(1).

The government also seeks to challenge McKenna's credibility, should he testify,

by introducing McKenna's prior convictions under Fed. R. Evid. 609.  If McKenna

chooses to testify, the jury is entitled to know that McKenna has a prior conviction for

making unsworn falsifications.  I find that the probative value of introducing this

conviction for the jury to consider in evaluating McKenna's testimony substantially

outweighs its prejudicial effect.  The government has provided ample notice to the

defendant of its intent to introduce the evidence.  Therefore, McKenna's prior criminal

convictions are admissible under Fed. R. Evid. 609 should the defendant choose to

testify.  Accordingly, the defendant's motion to bar the government from use of the

criminal convictions is denied.

## III.    CONCLUSION

In light of the foregoing, I will deny the defendants' pretrial motions discussed

herein.  An appropriate Order follows.